E. H. Ewing, Special J.,
delivered tbe opinion of tbe Court.
Tbe bill in this case was filed in tbe Chancery Court at Lawrenceburg by tbe complainants against defendants, alleging that in tbe year 1849 defendant, William Cbafiin, bad brought an action on tbe case in tbe Circuit Court of Lawrence county against defendant, Gullet, and complainants, Hough & Price, for tbe price of certain stagecoaches and horses, alleged to have been sold by Chaffin to Gullet. Said bill states that there were several counts in tbe declaration in said action, one or more of which alleged that there was a written agreement between said Chaffin & Gullet, in which the said Price & Hough be *240 came the sureties or guarantors for the said Gullet in said purchase; that there were several trials of said cause in the Circuit Court of Lawrence, in which the juries could not agree; but that afterwards, upon a trial of said cause in the Circuit Court of Giles county, to which said case had been transferred by change of venue, there was a verdict for all of said defendants; that from the judgment upon this verdict there was an appeal to the Supreme Court, where the judgment was reversed, and a new trial granted to the plaintiff, and the cause remanded to the Circuit Court of Giles county, where it is now pending. The bill further states that the defence of complainants at law is embarrassed; and that the Supreme Court, in its opinion in the case at law, “adjudges” that one ground of their defence could be made only in equity. They state they had no interest whatever in the contract of Gullet in his purchase, but that, about the time of said purchase, said Gullet gave Chaffin an obligation to carry the mail on the mail route on which said stock was employed, and save him harmless against all damages from the Post Office Department, and that they became sureties in said obligation; that before they would consent to become such sureties, Chaffin promised them that said stock should be suffered to remain on the road, so that complainants might themselves carry out the contract if Gullet should fail to do so, and that said Chaffin further assured them that there were no liens or debts to which said property could be subjected; and that, upon the strength of these promises and assurances, they signed said obligation. They state that it was not true in fact that said property was free from liens and liability to debts; that Chaffin & Gullet, having been partners previously in said property and in running said *241 per construction of the will in reference to that question is more involved in doubt, and some very nice distinctions have been drawn in the cases upon that subject. And, as in most other questions of this description, it has been found no easy task to reconcile them, or adduce any fixed, clear, and uniform rule.
This is an inherent difficulty in all questions depending on construction and interest, as every case must depend upon its own facts and the particular phraseology employed; and almost every instrument has something in it different from any other. What, then, was the intention of the testator in this case, upon a fair construction of the words employed, read in the light of surrounding circumstances ? His daughter was the primary and prominent object of his bounty. But she was unfortunately married, and he interposed trustees for her protection against her dissipated, improvident husband. But for this fact, there is no reason to suppose that he would have deviated in her case from the course adopted in the will towards his other daughters and sons. She was, however, the mother of children, and had the cares and responsibilities of a family. These must also be supported but of the same fund, as no other means could be anticipated. Consequently, the property or the rents or use of the land and hire or services of the slaves were to be applied by the trustees to the support of the family — not to each separately, but to all collectively. All were entitled to participate in this support so long as they continued members of the family. The true intention was that the fund should go into the hands of Susan, the mother, and be applied by her to the “use and benefit” of her whole family. She would receive it onerated with that charge, and a *242 Court of Equity would doubtless have power to make her so apply it. It would be her duty to furnish them with a necessary support, and attend to their education, so far as the fund might be sufficient. Whenever a daughter or son retired from the family and ceased to be a member of it, the right to participate in the fund was surrendered. Nor could any of them hold the widow to an account as to the income and expenditures, none of them having any individual or several right to it, but only the right of united enjoyment as and so long as they remained with the mother, and constituted a part of her family. If any had been improperly expelled, a different question might arise; but a voluntary retirement must be regarded as a surrender of the common right to participate in the current income. This construction will be found well sustained by authority. “ Where the income of property is given to the mother for the maintenance of herself and children, what is intended is, that she shall receive the whole income, and shall maintain the children out of it so long as they form part of her family; but when they are foris-familiated, as by marriage, they lose the right to maintenance.” 2 Spence, 461. The same author, on p. 468, remarks, that “ where property is so given or settled as that children, either in respect of maintenance or otherwise, and the parents respectively, have an interest in unascertained proportions, or an interest not defined, the extent and nature of the benefit which the children may be entitled to, will of course greatly if not altogether depend upon the circumstances of each particular case.”
Some aid in the construction in this particular case may be derived from the clauses immediately preceding the one .under examination. The residuary clause with which *243 mail line, creditors of said firm soon seized and sold the greater part of said stock, and in fact all of it that remained after the sale of a portion, the proceeds of which were applied in part payment of Chaffin’s debt; that Chaffin himself aided and encouraged said creditors to levy upon and sell said property as partnership property, and thus deprived both Grullet and themselves of the means of complying with said obligation; that said Chaffin himself, as a partner, in aid of creditors, filed a bill, and attached a. portion of said property, and had it sold for the debts of Chaffin & Grullet. They say that there has been no final settlement between Chaffin & Grullet, and that, as Gullet informs them, and as they believe, upon a fair settlement between the partners, Chaffin would owe Gullet enough on partnership account to extinguish his liability on the purchase of the coaches and horses. They allege that from the complicate nature of these transactions, they cannot make a full cftefence at law; that their remedy, if any, is inadequate and embarrassed; and they pray for an injunction against the further proceedings in the cause at law, that all necessary accounts be taken, and for general relief. To this bill there was a general demurrer. The Chancellor sustained the demurrer and dismissed the bill, from which decree there was an appeal to this Court. Was the action of the Chancellor correct ?
It is urged for the defendant that the complainants have, for any thing alleged in their bill, &■ complete and adequate defence at law, so far as they have a defence at all. He says that the alleged representations and promises attributed, formed no part of the contract; that the contract was a written one, and could not he explained, altered, or added to by parol; that such promises and re *244 presentations, if they can be given in evidence at all, can he given as well at law as in equity; that for the set-off claimed by complainants in substitution to the rights of Gullet, an injunction should not be granted until after judgment, and then only upon allegation of Chaffin’s insolvency ; that complainants do not allege that there has been no bill between Gullet & Chaffin, settling their partnership affairs; that the bill, if filed at all, should have been filed by Gullet, and that complainants cannot in this way be substituted to his rights; that their course would have been to attach the indebtedness of Gullet.
It is true, as insisted by defendant Chaffin, that a written obligation cannot be added to or altered by parol, nor is this attempted to be done under complainants’ bill. The representations and promises alleged were used by defendant Chaffin as inducements to obtain the signatures of complainants as sureties; and it would violate no principle to admit them as evidence. So far as the representations are concerned, they might certainly be given in evidence at law, as affecting the validity of the contract. The promises, perhaps, stand upon another principle: if they had been kept, there would have been no use in presenting them in evidence; but not having been kept, and a damage having thereby accrued to complainants, or to their principal, Gullet, there would follow a partial failure of consideration, which would be a ground of equity jurisdiction. The general doctrine contended for by defendant Chaffin, that an equitable set-off is not ground for an injunction until after judgment, is perhaps correct; and it has been held, too, that no injunction would be granted even after judgment, unless the prayer for it was accompanied by an allegation of the judgment-creditor’s insol *245 vency. There is something more, however, in this case than an ordinary equitable set-off. Upon the principle contended for by defendant, it would be necessary either that Gullet should file his bill against Chaffin, and obtain a decree, which he might use as a set-off against Chaffin’s judgment, obtaining an injunction in the mean time against the execution of Chaffin’s judgment, supposing him insolvent ; or, supposing him solvent, which he, Gullet, might collect, having first paid Chaffin’s judgment against him. Price & Hough, if Gullet should be insolvent, would have, however, to pay the judgment of Chaffin; and they could get the benefit of Gullet’s decree only by first getting a judgment over against Gullet, and attaching his decree against Chaffin. One of the grounds of the jurisdiction of a Court of Equity is the avoiding circuity and multiplicity of action. By allowing the present bill, all of this is avoided. Chaffin & Gullet will both become actors in an account of the partnership transactions between them; and the balance, if in Gullet’s favor, can be at once applied as a set-off to what may be found in arrear upon the contract for the coaches and horses. Gullet’s liability upon that contract was never doubtful, and the balance due' from him is matter of calculation. Besides, even the liability of Price & Hough, as Gullet’s sureties, is now fixed by the opinion of this Court in the case at law, and is commensurate with Gullet’s failure. It is true that there is no formal allegation in this bill that there has not been a bill already settling the partnership transactions between Gullet & Chaffin; but there is an allegation that there has been no final settlement between them, and that Chaffin is indebted to Gullet upon partnership account, and that this indebtedness is sufficient to discharge *246 Chaffin’s claim in his suit at law. These considerations would perhaps he sufficient to sustain the jurisdiction of a Court of Chancery under this hill; hut there is still another consideration upon which its jurisdiction is still more clear. The sale hy Chaffin to Gullet was with an implied warranty of title to at least Chaffin’s share of the coaches and horses. The seizure hy creditors of the firm of this as partnership property, whether at the instigation and with the aid of Chaffin or not, was a breach of the warranty, and involved a partial failure of considerations upon which Gullet might have filed his hill; and this hill would of necessity have required a settlement of all the partnership transactions. Now, have not Hough & Price an equal right to file such a hill ? Are they not interested in the consideration given to their principal ? and does not their whole liability, as sureties, rest upon that consideration ? When it fails to him it also fails to them. And indeed they may be in this much better position than their principal, that they may rest upon the failure of consideration in this particular transaction, and not he driven to inquire how the general balance may lie between the partners.
In any event, the bill in this case should not have been dismissed upon demurrer, hut should have been retained for answer, as a hill of discovery, upon the allegations in regard to fraudulent representations; and if no discovery were made upon the coming in of the answer, it would then have been early enough to have dismissed it. We are of opinion, however, that the jurisdiction is sustainable upon the other grounds mentioned.
Upon the whole, we are of opinion that the decree of the Chancellor was erroneous. The demurrer is therefore *247 overruled; the cause remanded to the Chancery Court at Lawrenceburg, -where the defendant will he required to answer.